OPINION
Doug L. Blaylock is appealing from the judgment rendered by the Area Two County Court of Montgomery County, Ohio, following a hearing to the bench, that he is guilty of violating, on the night of August 3, 1999, a civil protection order.
There is no dispute regarding the facts of the matter. Since first meeting in July of 1998, Blaylock and Tameita E. Drake engaged in a romantic but often times stormy relationship. Drake was assaulted and threatened by Blaylock on more than one occasion to the point where on January 25, 1999, after a hearing held in Montgomery County Common Pleas Court, Drake was granted an anti-stalking civil protection order (CPO). Blaylock was even present at the hearing, although unrepresented, and stipulated to the facts set forth in Drake's petition. The issuance of the CPO, however, did not end the relationship of these two people. This appeal is from a charge against Blaylock that he violated the CPO on the night of August 3, 1999. A hearing was held on the charge, and during the hearing the court read the following stipulations, made by counsel for each party, into the record, as follows:
 Stipulate that both parties were together voluntarily on August 3rd, 1999.
 Stipulate that there had been mutual meetings to that the jail and various locations after Doug Blaylock's release from jail after the CPO was issued by Judge Foley in January of 1999.
 Tamika [sic] Drake would testify that she agreed to these meetings as a way to placate Doug Blaylock and upon his promise that he was getting counseling.
 Stipulate that Doug Blaylock and Tamika [sic] Drake were found in a car together at Christy's Club located in Riverside, Montgomery County, Ohio, and there was less than one hundred — and that they were less than one hundred yards apart.
 Stipulate there was no violence between Doug Blaylock and Tamika [sic] Drake.
Tr. 28-29.
Those stipulations encapsuled the record of Drake visiting Blaylock from December, 1998, until June of 1999, when he had been incarcerated in the Montgomery County Jail. During that period, Drake also made some attempts to get the CPO lifted, but never actually applied to the court for that purpose. On the night in question, Drake drove to the Christy Club on Valley Street to return some of Blaylock's belongings, which he had left at her house. At about 3:30 a.m. that night, Blaylock was discovered by the Riverside Police sitting in Drake's car with her, whereupon he was cited for violating the CPO. Following the hearing on September 21, 1999, the trial court found Blaylock guilty and sentenced him to 180 days at the Dayton Rehabilitation Center. A week later, however, he was granted, upon his request, early release, the balance of his sentence was suspended, and he was placed on probation. Blaylock timely appealed from that conviction and sentence and brings the following sole assignment of error:
 THE TRIAL COURT'S DECISION, FINDING DEFENDANT GUILTY OF VIOLATING A CIVIL PROTECTION ORDER, IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
In the usual weight of the evidence challenge, this court
 "[R]eview[s] the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction."
State v. Thompkins (1997), 78 Ohio St.3d 380, 387, quoting Statev. Martin (1983), 20 Ohio App.3d 172, 175. In a weight of the evidence challenge, we defer to the fact finder's decision as to which testimony to credit, and to what extent to do so. State v.Lawson (Aug. 22, 1997), Montgomery App. No. 16288, unreported. This standard allows us to "judge the credibility of opposing opinion testimony, but not of fact testimony, unless it is so incredible that it defies belief." City of Fairborn v. Boles (May 15, 1998), Greene App. No. 97-CA-110, unreported.
In the appeal before us, however, there is no need to credit or discredit any testimony. There is no disagreement regarding the facts and, in fact, the stipulations entered in the record, quoted above, provide everything that is necessary to render a judgment by this court. The appellant's basic argument is that Drake's actions toward him were inconsistent with the restraining order against him and, in effect, drew him into a "technical" violation of the CPO. This argument, however, is both factually incorrect and, legally, irrelevant. With regard to the facts, the parties entered a joint Exhibit A into the record during the hearing, which was the report by the officer who found the parties together in Drake's car. In his report, he states that he knew "that Drake had a TPO [sic] against Blaylock. I asked Blaylock about it and he stated that he knew he should not be around her . . ."
As to the law, it is clear, as the court explained to Blaylock from the bench at the conclusion of the hearing:
 THE COURT: Well, the Court has listened to what the Prosecution has proposed and what the defense has responded with.
 And the problem that comes out is the one that the Court was faced with initially and that is the fact that Mr. Drake (sic) was under an order from a Judge not to go around Miss Drake.
 It indicated very clearly that even if he was invited it didn't change the fact that he was not to go around her. And that her invitation did not forgive his responsibility to follow the Court's orders.
 Mr. Blaylock, these orders are between the Judge and you. And really whether or not the alleged victim or even the person that asked for them wants them to be lifted doesn't really change the fact that the Court said you have to stay away from her.
 And I think that's made pretty clear in the order itself.
Tr. 36.
At the end of its statement, the court is referring to bold-type statements on the CPO which informed Blaylock that he cannot be present within 100 yards of Drake even with her permission and, further, that the order cannot be waived or nullified by an invitation or consent by Drake. Tr. 6-7.
This court has recognized that police departments that are required to enforce protective orders must be able to rely upon their validity until they are found otherwise by a court of law. "The enforcement of these orders cannot be undermined by any change in relationships between the [parties] or else their enforcement and the very authority of the court that issues them would be a nullity." Xenia v. Berry (Jan. 19, 1994), Greene App. No. 93-CA-39, unreported. The CPO here clearly stated that it remains in effect for five years "unless modified, vacated, or extended by order of this Court." State's Exhibit 1.
Apparently the court recognized certain extenuating circumstances here, such as no violence or threat of violence by Blaylock and Drake's accommodating approaches to him, when it substantially reduced his sentence, granted him early release, and placed him on probation. The fact remains, however, that Blaylock unquestionably violated the CPO.
The assignment of error is overruled, and the judgment is affirmed.
 ____________________________ FREDERICK N. YOUNG, J.
WOLFF, J. and FAIN, J., concur.